**NATIONAL FUEL GAS SUPPLY CORPORATION, Plaintiff–Appellant,**

**v.**

**PUBLIC SERVICE COMMISSION OF the STATE OF NEW YORK, Peter A. Bradford, Harold A. Jerry, Jr., Gail Garfield Schwartz, Eli M. Noam, James T. McFarland, Edward M. Kresky, and Henry G. Williams, in their official ca-**

pacity as Commissioners of the Public Service Commission of the State of New York, Defendants–Appellees.

No. 231, Docket 89–7458.

United States Court of Appeals, Second Circuit.

Argued Nov. 6, 1989.

Decided Jan. 24, 1990.

Grant S. Lewis (Bruce V. Miller, Ronald J. Gizzi, Jon R. Mostel, LeBoeuf, Lamb, Leiby & MacRae, New York City, Richard DiValerio, David W. Reitz, Nat. Fuel Gas Supply Corp., Buffalo, N.Y., of counsel), for plaintiff-appellant.

Jonathan D. Feinberg (William J. Cowan, Public Service Com'n of the State of N.Y., Albany, N.Y., of counsel), for defendants-appellees.

Before TIMBERS and WINTER, Circuit Judges, and LEISURE,* District Judge.

WINTER, Circuit Judge:

This appeal involves the interrelationship between state and federal regulatory authorities governing the planning and construction of pipeline facilities for the interstate transportation of natural gas. Appellant National Fuel Gas Supply Corporation ("National Fuel") brought this action in the Northern District of New York seeking a declaratory judgment and an injunction to prevent the Public Service Commission of the State of New York ("PSC") from regulating certain of National Fuel's pipeline facilities under Article VII of the Public Service Law of the State of New York, N.Y.Pub.Serv.Law §§ 120–130 (McKinney 1989). In proceedings before the Federal Energy Regulatory Commission ("FERC") National Fuel had obtained a federal permit to construct a length of pipeline in West Seneca, New York. The basis for the

---

* The Hon. Peter K. Leisure, United States District Judge for the Southern District of New York, sitting by designation.

instant action is National Fuel's claim that the FERC proceedings preempted enforcement by the PSC of Article VII's requirements with regard to the project.

National Fuel and the PSC filed cross-motions for summary judgment. Judge Munson granted the PSC's motion, holding that Article VII could be applied by the PSC so as not to conflict with the federal regulatory scheme. We disagree and reverse.

## BACKGROUND

### 1. *Federal Regulatory Framework and National Fuel's Application*

National Fuel transports and sells natural gas in interstate commerce and is a "natural-gas company" subject to FERC regulation under Section 717a(6) of the Natural Gas Act, 15 U.S.C. §§ 717–717w (1988). Pursuant to Section 717f(c), a natural-gas company must obtain a "certificate of public convenience and necessity" from the FERC before constructing or operating facilities used for the interstate transportation and sale of natural gas. Similarly, before abandoning any portion of those facilities, a natural-gas company must obtain the permission and approval of the FERC. *See* 15 U.S.C. § 717f(b).

Acting under the Natural Gas Act and the Natural Gas Pipeline Safety Act, 49 U.S.C.App. §§ 1671–1686 (1982 & Supp. V 1987), the FERC has promulgated detailed regulations concerning applications for such certificates and for orders permitting abandonment. *See* 18 C.F.R. Part 157, Subpart A (1989). These regulations require an applicant to attach certain exhibits to its application. These are to provide data pertinent to the abandonment of the old line, 18 C.F.R. § 157.18, and to describe the characteristics of the new pipeline project, 18 C.F.R. § 157.14. The necessary exhibits include a map showing the location and dimensions of the new project, flow diagrams representing daily operational capacity with and without the proposed change, and a statement setting forth the arrangements regarding the supervision and management of the new construction. 18 C.F.R. § 157.14(a).

In addition, the FERC requires a statement of factors considered by a natural-gas company in arriving at a given site proposal. These include a discussion of the possibility of using existing rights-of-way, 18 C.F.R. § 157.14(a)(6–a), and, if applicable, a statement explaining the factors considered in routing a facility through an officially designated scenic, historic, recreational or wildlife area with a list of the designated federal or state authorities notified by the applicant of the proceeding before the FERC, 18 C.F.R. § 157.14(a)(6–b). An applicant must also provide a statement that it has followed the guidelines for planning, locating, constructing and maintaining facilities set out in 18 C.F.R. § 2.69, in order that "[i]n the interest of preserving scenic, historic, wildlife and recreational values, the construction and maintenance of facilities authorized by certificates granted under Section 7(c) of the Natural Gas Act should be undertaken in a manner that will minimize adverse effects on these values." *See also* 18 C.F.R. § 157.14(a)(6–c). Also, as required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4347 (1982 & Supp. V 1987), an applicant must submit an environmental impact statement detailing potential adverse effects of the project and alternatives which might avoid them. 18 C.F.R. § 157.14(a)(6–d).

FERC regulations provide for the participation of interested parties in certification proceedings. Notice of each application is published in the Federal Register, with a copy of the notice mailed to the affected state or states. 18 C.F.R. §§ 157.9, 157.10. State commissions may intervene as of right. 18 C.F.R. § 385.214.

On January 21, 1986, National Fuel filed an application with the FERC seeking permission to abandon 1.78 miles of interstate pipeline and an accompanying regulator station. It also sought a certificate of public convenience and necessity authorizing construction of a replacement line of 1.61 miles of pipe and a new regulator station. The facilities to be abandoned and the proposed replacements are all located in the town of West Seneca, Erie County, New

York. Both the old facility and the replacement are designed solely to transport natural gas in interstate commerce. The PSC was given notice of National Fuel's application but declined to exercise its right to intervene.

On June 16, 1986, the FERC issued an order approving the proposed abandonment and issuing a certificate of public convenience and necessity for the West Seneca project, "authorizing National Fuel to construct and operate the subject facilities and to deliver gas at the new delivery point." In October 1987, National Fuel filed a petition to revise the route of the replacement pipeline to run 1.45 miles instead of 1.61 miles. Revisions were made to the project exhibits, including the environmental report. The PSC again declined to intervene. On July 5, 1988, the FERC issued an Order Amending Certificate approving the revised route.

### 2. *The New York Regulatory Framework and the Instant Action*

New York State, under Public Service Law Section 121, requires persons proposing to construct natural gas transmission lines extending one thousand feet or longer to be used to transport gas at pressures of one hundred twenty-five pounds per square inch or more to obtain a "certificate of environmental compatibility and public need" from the PSC. N.Y.Pub.Serv.Law § 121 (McKinney 1989). National Fuel's project in the instant matter meets these jurisdictional dimensions.

Article VII of the Public Service Law governs the PSC's handling of certification procedures. Section 126 provides that before issuing such a certificate the PSC "shall find and determine" several factors. Although there are seven factors in all, only five of them need be met by a proposed facility that, like National Fuel's, is less than ten miles in length. N.Y.Pub.

Serv.Law § 121–a(7). Those five necessary findings are:

(a) the basis of the need for the facility;

(b) the nature of the probable environmental impact;

(e) ... that the location of the line will not pose an undue hazard to persons or property along the area traversed by the line;

(f) that the location of the facility as proposed conforms to applicable state and local laws and regulations issued thereunder, all of which shall be binding upon the commission, except that the commission may refuse to apply any local ordinance, law, resolution or other action or any regulation issued thereunder or any local standard or requirement which would be otherwise applicable if it finds that as applied to the proposed facility such is unreasonably restrictive in view of the existing technology, or of factors of cost or economics, or of the needs of consumers whether located inside or outside of such municipality.

(g) that the facility will serve the public interest, convenience, and necessity....

N.Y.Pub.Serv.Law § 126(1).[1]

Like the FERC proceeding, the PSC's application process involves the filing of supporting documentation by the applicant. Section 122 of the Public Service Law states that

[a]n applicant for a certificate shall file with the commission an application, in such form as the commission may prescribe, containing the following information: (a) the location of the site or right-of-way; (b) a description of the transmission facility to be built thereon; (c) a summary of any studies which have been made of the environmental impact of the project, and a description of such studies; (d) a statement explaining the need for the facility; (e) a description of any rea-

---

**1.** Section 126(1)(d) applies only to electric transmission lines. Section 126(1)(c), although not applicable here, does affect gas lines longer than ten miles under Section 121–a(7). It requires a finding by the PSC:

that the facility represents the minimum adverse environmental impact, considering the state of available technology and the nature and economics of the various alternatives, and other pertinent considerations including but not limited to, the effect on agricultural lands, wetlands, parklands and river corridors traversed.

N.Y.Pub.Serv.Law § 126(1)(c).

sonable alternate location or locations for the proposed facility, a description of the comparative methods and detriments of each location submitted, and a statement of the reasons why the primary proposed location is best suited for the facility; and (f) such other information as the applicant may consider relevant or the commission may by regulation require. Copies of all the studies referred to in (c) above shall be filed with the commission and shall be available for public inspection.

N.Y.Pub.Serv.Law § 122(1). Gas lines extending less than ten miles and those extending less than five miles with a nominal diameter of six inches or less require the filing of somewhat abbreviated versions of the survey above. N.Y.Pub.Serv.Law §§ 121–a(2), 121–a(3).

For many years after enactment of Article VII, the PSC had never attempted to subject interstate pipeline construction to Article VII's regulatory scheme. In recent times, however, the PSC has attempted to assert authority over such construction. Anticipating an attempt by the PSC to review the National Fuel project at issue in the instant matter, National Fuel took the position that it did not need to seek a PSC certificate because Article VII was preempted by the various federal statutes and FERC regulations adopted pursuant to them. National Fuel therefore brought this action in the Northern District of New York seeking a declaratory judgment and an injunction against the PSC.

On cross-motions for summary judgment, the district court ruled in favor of the PSC and dismissed the complaint. Judge Munson held that even if the Natural Gas Act and the Natural Gas Pipeline Safety Act created an area preempted by FERC, that area is "pockmarked with exceptions." Relying on Public Service Law Section 121(4), which states that Article VII "shall not apply to any major utility transmission facility ... [o]ver which any agency or department of the federal government has exclusive jurisdiction, or has jurisdiction concurrent with that of the state and has exercised such jurisdiction, to the exclusion of regulation of the facility by

the state," N.Y.Pub.Serv.Law §§ 121(4), 121(4)(c), Judge Munson held that Article VII could be applied in a way that would avoid encroaching on the FERC's jurisdiction. Finally, he held that Congress, in passing the various statutes in question, did not intend to preempt the states from maintaining their own environmental supervision of FERC-authorized projects. We disagree on all points.

### DISCUSSION

The preemption doctrine is rooted in the Supremacy Clause of the Constitution, Article VI, clause 2, which states, "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Preemption exists under the Supremacy Clause where (i) Congress expressly intended to preempt state law, *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); (ii) there is actual conflict between federal and state law, *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); (iii) compliance with both federal and state law is impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); (iv) there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); (v) Congress has "occupied the field" of the regulation, leaving no room for a state to supplement the federal law, *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947); or (vi) the state statute forms an obstacle to the realization of Congressional objectives, *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). *See generally Louisiana Pub. Serv. Comm'n v. Federal Communications Comm'n,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d

369 (1986). Federal law need not be statutory to preempt state law. Regulations promulgated by an agency pursuant to its delegated authority may preempt similar state regulations. *See Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984); *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

National Fuel's preemption argument rests on two theories. First, it argues that the Natural Gas Act was intended by Congress to vest exclusive jurisdiction in the FERC to regulate natural gas pipelines used in interstate commerce. Second, it asserts that a comparison of Article VII and the FERC regime demonstrates that Congress has fully occupied the field that the PSC would regulate. Given the considerable overlap of the two regulatory schemes and the delay or frustration of federally approved projects that would be the inevitable outcome of PSC proceedings regarding every interstate project, National Fuel's arguments seem facially overwhelming. To these arguments, however, the PSC offers an inventive response. Conceding *sub silentio* that FERC proceedings and the whole of Article VII cannot coexist, the PSC argues that Article VII may be applied piecemeal under Section 121(4)(c), which disclaims state jurisdiction where there is exclusive federal jurisdiction or concurrent federal jurisdiction that has been exercised. The PSC goes on to argue that the FERC does not conduct "site-specific" environmental review and that such review is therefore neither a matter within exclusive federal jurisdiction nor a matter within concurrent federal jurisdiction that has been exercised. Such review, it is argued, may thus be the subject of PSC proceedings.

■ As to National Fuel's argument that Congress intended to vest exclusive jurisdiction to regulate pipelines in the FERC, a recent Supreme Court decision weighs heavily in National Fuel's favor. In *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988), the Court held 8–0 that a Michigan statute requiring natural gas companies to obtain approval from the Michigan Public Service Commission before issuing long-term securities was preempted by the Natural Gas Act. Writing for the Court, Justice Blackmun defined the preemption issue broadly as a question of "whether [the Michigan law] is a regulation of the rates and facilities of natural gas companies used in transportation and sale for resale of natural gas in interstate commerce." 108 S.Ct. at 1154. Finding that the Michigan law was such a regulation, the Court concluded that it was preempted. *See id.*

The PSC seeks to distinguish *Schneidewind* on the ground that the Michigan law in question, although it affected only the issuance of securities, "had as its central purpose[ ] the maintenance of [natural-gas companies'] rates at what the State considered a reasonable level," thereby encroaching upon the FERC's jurisdiction, Appellees' brief at 15 (quoting *Northwest Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas,* — U.S. —, 109 S.Ct. 1262, 1275 n. 10, 103 L.Ed.2d 509 (1989)). In contrast, it argues that site-specific environmental review has no such effect.

*Schneidewind* stated, however, that the FERC has exclusive authority over the "rates *and facilities*" of interstate gas pipelines. *See* 108 S.Ct. at 1151, 1154 (emphasis added). Even if we assume that the proposed PSC regulation would be limited to site-specific environmental review—an issue discussed *infra*—that review is undeniably a regulation of a facility used in the interstate transportation of natural gas. Such proceedings would certainly delay[2] and might well, by the imposition of additional requirements or prohibitions, prevent the construction of federally approved in-

---

**2.** The PSC concedes that just such delays were visited upon *amicus curiae* Columbia Gas Transmission Corporation in an Article VII proceeding concerning an interstate gas facility. It argues, however, that those delays were caused by extraordinary and exceptional local opposition. We perceive no reason to expect that local opposition will be an exceptional event, particularly because there may generally be little local benefit from interstate facilities.

terstate gas facilities. Indeed, we were advised at oral argument that the PSC is prepared to use the threat of route-refusal or fines of $100,000 per day against National Fuel in the event of non-compliance. In *Schneidewind*, the Court noted a similar "imminent possibility" of conflict in holding the Michigan statute preempted. *See* 108 S.Ct. at 1156; *see also Northern Natural Gas Co. v. State Corp. Comm'n of Kansas*, 372 U.S. 84, 91–93, 83 S.Ct. 646, 650–652, 9 L.Ed.2d 601 (1963); *National Steel Corp. v. Long*, 689 F.Supp. 729, 738 (W.D. Mich.1988), *aff'd sub nom. Michigan Consolidated Gas Co. v. Panhandle Eastern Pipe Line Co.*, 887 F.2d 1295 (6th Cir.1989), *Northwest Central Pipeline*, relied upon by the PSC, is not to the contrary. The Kansas law upheld there was found by the Court to be plausibly intended as a regulation of the "production or gathering" of natural gas, an area expressly preserved for the states by Section 1(b) of the Natural Gas Act, 15 U.S.C. § 717(b). *See* 109 S.Ct. at 1275.

The validity of National Fuel's second argument—that preemption may be inferred because Congress has occupied the field of regulation regarding interstate gas transmission facilities—is also apparent. The overlap of the pertinent federal and state regulatory regimes is very substantial. For instance, an applicant for a PSC certificate of environmental compatibility and public need must satisfy the PSC regarding "the basis of the need for the facility," and must show "that the facility *will serve the public interest, convenience, and necessity.*" N.Y.Pub. Serv.Law §§ 126(1)(a), 126(1)(g) (emphasis added). The FERC, meanwhile, will issue a certificate only if it finds that:

> the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, sale, operation, construction, extension, or acquisition, to the extent authorized by the certificate, *is or will be required by the present or future public convenience and necessity;*

otherwise such application shall be denied.

15 U.S.C. § 717f(e) (emphasis added).

Article VII requires a finding by the PSC regarding "the nature of the probable environmental impact," and, for lines longer than ten miles, requires a finding "that the facility represents the minimum adverse environmental impact" under the prevailing technological and economic circumstances. *See* N.Y.Pub.Serv.Law §§ 126(1)(b), 126(1)(c); *supra* note 1. The FERC also requires environmental information, including a statement of the factors considered in arriving at a given site proposal, a statement exploring the factors considered in proposing a route through scenic, historic, recreational or wildlife areas, 18 C.F.R. § 157.14(a)(6–b), a statement adopting the guidelines of 18 C.F.R. § 2.69 regarding the preservation of scenic, historic, wildlife and recreational values, 18 C.F.R. § 157.14(a)(6–c), and an environmental impact statement in compliance with the NEPA. 18 C.F.R. § 380.3.

With regard to safety considerations, Article VII requires that the PSC determine "that the location of the line will not pose an undue hazard to persons or property along the area traversed by the line," and "that the location of the facility as proposed conforms to applicable state and local laws and regulations issued thereunder." N.Y.Pub.Serv.Law §§ 126(1)(e), 126(1)(f). The National Gas Pipeline Safety Act governs safety requirements for interstate gas transmission lines and expressly preempts more stringent regulation of such lines by state agencies. *See* 49 U.S.C.App. § 1672(a)(1).

The PSC does not deny that Article VII is substantially preempted by the FERC's regulatory authority. Instead, it argues that Section 121(4)(c), negating application of the Article to facilities "[o]ver which any agency or department of the federal government has exclusive jurisdiction, or has jurisdiction concurrent with that of the state and has exercised such jurisdiction, to the exclusion of regulation of the facility by the state," allows the PSC to pick and choose among Article VII's various re-

quirements and to apply the Article piecemeal in each case to substantive areas it deems unregulated by the federal government.

We are not persuaded. Were we a New York state court, we would not hesitate to hold that Article VII is not amenable to piecemeal application. Article VII states that each of the five (in the case of longer pipelines, seven) requisite findings must be made by the PSC before a certificate will be issued. It thus makes no provision for issuance of a certificate when some but not other of the findings have been made. Similarly, the language of Section 121(4)(c) is most easily read as a statement that Article VII is inapplicable in its entirety when federal authority has been exercised. Tellingly, moreover, the PSC itself appears for many years to have agreed that piecemeal application was not authorized and did not attempt to regulate pipelines carrying natural gas in interstate commerce until recently.

We are not a New York state court, however, and will not dwell on the meaning of Article VII because we believe that even if the PSC's present view is correct and piecemeal application of Article VII was intended by the New York legislature, Section 121(4)(c) is insufficient to preserve the authority asserted. As the PSC interprets it, Section 121(4) says no more than that the PSC should not exercise authority preempted under the Supremacy Clause. That Section does not purport to identify what portions of PSC authority under Article VII are viable or preempted in particular cases. Rather, once PSC proceedings begin, it can in its discretion attempt to exercise whatever portions of its regulatory authority it chooses, subject only to review by the New York courts with the possibility of discretionary review in the United States Supreme Court. Although its litigating posture in this case is to designate site-specific environmental review as its goal, Article VII offers no guidelines or directions preventing the PSC from attempting to exercise other aspects of its regulatory authority with regard to National Fuel's project. So-called piecemeal application of Article VII would thus allow the PSC to confront interstate transporters of gas with as much of the panoply of Article VII regulation as it chooses and to force them to litigate the preemption question issue by issue in state tribunals. Even if a transporter were ultimately successful before the PSC, the practical effect would be to undermine the FERC approval by imposing the costs and delays inherent in litigation that must be undertaken without any guidelines as to limits on the exercise of state authority. If the PSC is correct, moreover, no state law, no matter how inconsistent with a federal law, would ever be facially preempted so long as it included a provision stating that the relevant state tribunals would abide by the Supremacy Clause, an obligation to which they are already bound.

Third, even if we assume that a small residue of valid PSC authority may exist, that the residue is easily identifiable, and that the PSC will forebear the exercise of the rest of its powers, the subject matter assertedly "saved" by Section 121(4)(c)—site-specific environmental review—is not New York's to save. The FERC expressly considered various data regarding the environmental effects of National Fuel's project before issuing a certificate of public convenience and necessity. National Fuel had to provide to the FERC a statement of factors considered in locating the facilities, including the possibility of using existing rights-of-way. It further provided a statement of factors considered in locating the facilities in scenic, historic, recreational or wildlife areas and the reasons for doing so. It had to provide yet another statement that it had followed federal guidelines minimizing adverse effects on scenic, historic, wildlife and recreational values. Finally, it had to submit an environmental impact statement to the FERC pursuant to NEPA.[3] The PSC was free to intervene

---

**3.** The PSC argues strenuously that the fact that the environmental impact statement submitted to the FERC was required by NEPA rather than

the Natural Gas Act somehow lessens the preemptive effect of the FERC's approval. We believe this argument is misplaced. As the text

and present whatever contrary data it wished. It declined to do so.

The matters sought to be regulated by the PSC were thus directly considered by the FERC. Under *Schneidewind,* such direct consideration is more than enough to preempt state regulation. In that case, the Court invalidated a Michigan law that concerned a matter not explicitly considered by the FERC, namely the issuance of long-term securities, because the law affected a preempted area, namely rate-making. Here, we confront a state law concerning a matter explicitly considered by the FERC and affecting a preempted area.

Congress placed authority regarding the location of interstate pipelines—in the present case affecting citizens of four states in addition to New York—in the FERC, a federal body that can make choices in the interests of energy consumers nationally, with intervention afforded as of right to relevant state commissions. Because FERC has authority to consider environmental issues, states may not engage in concurrent site-specific environmental review. Allowing all the sites and all the specifics to be regulated by agencies with only local constituencies would delay or prevent construction that has won approval after federal consideration of environmental factors and interstate need, with the increased costs or lack of gas to be borne by utility consumers in other states.

Finally, the PSC argues that the FERC regulations themselves require that an applicant obtain certain state river crossing permits, *see* 18 C.F.R. Part 380, App.A., ¶ 9.1, and that the PSC is the authority responsible for the issuance of those permits. We need not pause to consider this argument in detail, because National Fuel's action seeks neither to relieve itself of the requirements of the FERC certificate nor to avoid FERC regulation. To the extent that the PSC desires to challenge National Fuel's compliance with the FERC order, it may pursue whatever federal administrative and judicial remedies are available to

compel that compliance. Similarly, to the extent that the PSC desires to enforce federal regulations through available federal administrative or judicial decisions, nothing in our present decision prevents it from doing so.

## CONCLUSION

We reverse the decision of the district court and remand with instructions to enter judgment for National Fuel.

---

indicates, the FERC requires under its own authority extensive environmental data and considers that data in making its decision. It also considers the environmental impact statement required by NEPA. The decision is then made by the FERC, and whether NEPA itself preempts or does not preempt is simply irrelevant to the preemptive effect of that decision.